**2025 Tex. Bus. 26**

FILED IN
BUSINESS COURT OF TEXAS
BEVERLY CRUMLEY, CLERK
ENTERED
7/16/2025



## The Business Court of Texas,
## 1st Division

| | | |
|---|---|---|
| PRIMEXX ENERGY OPPORTUNITY FUND, LP and PRIMEXX ENERGY OPPORTUNITY FUND II, LP, *Plaintiffs*, <br><br> v. <br><br> PRIMEXX ENERGY CORPORATION, M. CHRISTOPHER DOYLE, ANGELO ACCONCIA, BLACKSTONE INC., BLACKSTONE HOLDINGS III LP, BLACKSTONE EMA II LLC, BMA VII LLC, BLACKSTONE ENERGY MANAGEMENT ASSOCIATES II LLC, BLACKSTONE ENERGY PARTNERS II LP, BLACKSTONE MANAGEMENT ASSOCIATES VII LLC, BLACKSTONE CAPITAL PARTNERS VII LP, BCP VII/BEP II HOLDINGS MANAGER LLS, BX PRIMEXX | § § § § § § § § § § § § § § § § § § § § § | Cause No. 24-BC01B-0010 |

TOPCO LLC, and BPP HOLDCO
LLC, *Defendants*

---
### MEMORANDUM OPINION
---

[¶ 1] Angelo Acconcia and Blackstone Inc. filed special appearances. Having considered those special appearances, the responses, the pleadings, the materials on file, and counsels' arguments, the court concluded that it lacked personal jurisdiction over those defendants, granted their special appearances, and dismissed the claims against them.

[¶ 2] The court concluded that the evidence fails to establish that PEOFs' claims against Acconcia arise from his purposeful contacts with Texas, and so the court lacks specific personal jurisdiction over him. Because PEOFs' Blackstone Inc. arguments are rooted in Acconcia's actions as their agent, the court lacks jurisdiction over Blackstone Inc. too. Moreover, Acconcia's forum contacts are attributable to a different entity, not Blackstone Inc.

## I. BACKGROUND

[¶ 3] Because the court previously released several opinions in this action, it discusses only the facts relevant to the present issues. *See* 2025 Tex.

Bus. 5; 2025 Tex. Bus. 9; 2025 Tex. Bus. 13; 2025 Tex. Bus. 21. The court uses abbreviations consistent with those opinions.[1]

## A. Procedural History

[¶ 4] PEOFs filed their Original Petition (Pet.) on October 25, 2024.

[¶ 5] Acconcia filed his special appearance, and the parties briefed the issue.[2]

[¶ 6] In January 2025, PEOFs filed a First Amended Petition (FAP) adding Blackstone Inc. as a defendant.

[¶ 7] Later, Blackstone Inc. filed its special appearance.[3] PEOFs opposed Blackstone Inc.'s special appearance and supplemented their opposition to Acconcia's special appearance on March 7, 2025.[4] The March seventh filings included in support confidential evidence obtained through discovery.

---

[1] *E.g.*, Third Amended Partnership Agreement (TAPA); Plaintiffs Primexx Energy Opportunity Fund LP and Primexx Energy Opportunity Fund II (PEOFs); Defendant BPP HoldCo LLC (BPP HoldCo); Primexx Energy Corporation (PEC); Primexx Energy Partners (PEP).

[2] Acconcia's 10/30/2024 Special Appearance (Acconcia's Br.); PEOFs' 11/1/2024 Opposition (PEOFs' Opp. to Acconcia); Acconcia's 11/4/2025 Reply (Acconcia's Reply).

[3] Blackstone Inc.'s 2/14/2025 Special Appearance (Blackstone Br.).

[4] PEOFs' 3/7/2025 Opposition (PEOFs' Opp. to Blackstone); PEOFs' 3/7/2025 Supplemental Opposition (PEOFs' Suppl. Opp. to Acconcia).

[¶ 8]  On March 10, 2025, the court entered 2025 Tex. Bus. 9, granting in part other defendants' summary judgment motion (MSJ Opinion).

[¶ 9]  Later, in response to questions from the court whether PEOFs intended to (i) file an amended pleading and (ii) take more jurisdictional discovery regarding the special appearances, PEOFs asked the court to decide the special appearances on the current record.

[¶ 10]  Two days later, the court granted Acconcia and Blackstone Inc.'s special appearances and dismissed the claims against them.

[¶ 11]  Thereafter, PEOFs filed their Second Amended Petition (SAP).

[¶ 12]  On May ninth and twenty-second, the court entered additional orders dismissing further claims against certain defendants.

[¶ 13]  A month later, the parties filed a Rule 11 agreement wherein PEOFs agreed to dismiss without prejudice their remaining claims against the remaining defendants for a tolling agreement while the parties appeal the court's previous rulings.  Their agreement stipulates, subject to the court's approval (which was granted), that the court's previous rulings (including its April 28, 2025, order on Acconcia and Blackstone Inc.'s special appearances) "shall be deemed to apply to the claims and parties in the [SAP]."

[¶ 14] On June 16, 2025, the court entered a final judgment. This court retains its plenary power for thirty days following the final judgment, which expires July 16, 2025. *See* TEX. R. CIV. P. 329b.

**B. Jurisdictional Facts**

[¶ 15] The court considers allegations contained in the SAP and related evidence submitted in response to Acconcia and Blackstone Inc.'s special appearances. *See Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658–59 (Tex. 2010). The court does not consider allegations made outside the SAP and only considers additional evidence to the extent it supports or undermines the SAP's allegations. *Id.*

[¶ 16] Below are the allegations and evidence that are material to this opinion. The court considered every allegation contained within PEOFs' pleadings as well as all the evidence submitted by the parties on these issues framed by the pleadings.

1.  **Acconcia**

    a.  **SAP Allegations**

- Acconcia is a Massachusetts citizen. ¶ 34.

- Acconcia served as a Senior Managing Director of Blackstone Inc., the President of BPP HoldCo, a director on the PEC Board, and a

member of Blackstone Management Partners LLC. ¶s 4, 34, 45, 51, 72, 90.

- Acconcia signed the TAPA for BPP HoldCo. ¶s 45, 50, 51.

- Acconcia was one of Blackstone Inc.'s most senior oil and gas dealmakers. ¶ 51.

- Acconcia was responsible (among others) for managing "Blackstone's"[5] Primexx investment. ¶ 72.

- Acconcia (among others) played a "central" and "instrumental" role in pushing through the Callon sale. ¶s 90–91, 96.

- Acconcia actively participated in, and facilitated, "Blackstone" and PEC's failures to (i) evaluate Primexx's viable options; (ii) conduct a proper due diligence, sale, or marketing process; (iii) consider whether a rushed sale without proper marketing would be fair to PEP or PEOFs; and (iv) properly allocate waterfall proceeds. ¶s 78–80, 104.

### b. Opposition Evidence

- Acconcia (as a director) attended remote/hybrid PEC board meetings on June ninth and July thirteenth, 2021.[6]

---

[5] PEOFs at times do not distinguish between "Blackstone" generally and Blackstone Inc. or individual Blackstone Inc. affiliated parties. However, the court attempts to distinguish between PEOFs' general allegations regarding "Blackstone" versus Blackstone Inc. because "each defendant's actions and contacts with the forum [must be considered] separately" (*i.e.*, so called "group pleading" is not sufficient to maintain personal jurisdiction over a particular defendant). *Morris v. Kohls-York*, 164 S.W.3d 686, 693 (Tex. App.—Austin 2005, pet. dism'd); *see Calder v. Jones*, 465 U.S. 783, 790 (1984).

[6] PEOFs' Opp. to Acconcia Exhibits 2 & 3 (it was not established whether Mr. Acconcia attended these meetings in person or remotely).

- Callon is based in Houston and maintains a Dallas registered agent.[7]

- Acconcia and others received a June 3, 2021, email from Chris Doyle regarding the Callon sale.[8]

- Acconcia admitted he was on the investment team and investment committee that decided to invest in Primexx.[9]

- Acconcia admitted that as a director, and part of his continuing obligations following "Blackstone's" investment, he participated in bi-weekly telephonic meetings of the PEC board.[10]

- The June 9, 2021, PEC board meeting (see above) was held in Dallas and via teleconference.[11]  Acconcia is noted as discussing matters unrelated to the Callon sale.

- Emails show Acconcia traveled to Dallas in early June 2021 to meet with the PEC leadership team.[12]

- Emails show Acconcia flew to Houston in late-June 2021.[13]

---

[7] PEOFs' Opp. to Acconcia Exhibit 4.

[8] PEOFs' Opp. to Acconcia Exhibit 5.

[9] PEOFs' Suppl. Opp. to Acconcia Exhibit 1 (*in camera*) (Feb. 21, 2025, Deposition of Angelo Acconcia) at 31:16–23, 33:9–34:2.

[10] PEOFs' Suppl. Opp. to Acconcia Exhibit 1 (*in camera*) at 41:21–43:18, 67:10–69:3; Exhibit 6 (*in camera*).

[11] PEOFs' Suppl. Opp. to Acconcia Exhibit 1 (*in camera*) at 71:17–76:22; Exhibit 5 (*in camera*).

[12] PEOFs' Suppl. Opp. to Acconcia Exhibit 1 (*in camera*) at 53:4-55:4; Exhibit 2 (*in camera*).

[13] PEOFs' Suppl. Opp. to Acconcia Exhibit 1 (*in camera*) at 48:2–49:16, 57:13–59:14; Exhibits 3 & 4 (*in camera*).

- Acconcia admitted he discussed Primexx business with third parties who appear to be located or have an address in Texas.[14]

- Acconcia admitted he had an indirect personal financial interest in the Primexx investment.[15]

## 2. Blackstone Inc.

### a. SAP Allegations

- Blackstone Inc. is a Delaware corporation with its principal place of business in New York.  ¶ 21.

- Blackstone Inc. and its subsidiaries, employees, and agents "control" and operate BPP HoldCo as well as the other Blackstone Inc. affiliated defendants and were responsible for managing and approving the Callon sale.  ¶s 1, 22–23, 46, 52, 56, 72–73, 90–91. The "principal business" of each entity in the "Blackstone" structure is controlling the entity one-level down as either the general partner of a limited partnership or the sole or managing member of an LLC—with Blackstone Inc. at the top and BPP HoldCo at the bottom.  ¶s 56–58.

- Acconcia was a Senior Managing Director of Blackstone Inc. (and therefore its agent).  ¶s 4, 34, 45, 51, 72, 90.  Other agents include Erik Belz, Omar Rehman, Tabea Hsi, Mark Henle, Jonathan Hamilton, Jeff Kelly, and Anika Gautam.  ¶s 52, 72–73, 91.

- Blackstone Inc.'s agents were responsible for managing "Blackstone's" investment in Primexx.  ¶ 72.  Its agents conducted business related to Primexx and the Callon sale on its behalf using "@blackstone.com" email addresses and sent

---

[14] PEOFs' Suppl. Opp. to Acconcia Exhibit 1 (*in camera*) at 62:11–64:15, 79:14–80:5, 80:22-83:10, 83:11–87:2; Exhibits 7, 8, 9, & 10 (*in camera*).

[15] PEOFs' Suppl. Opp. to Acconcia Exhibit 1 (*in camera*) at 38:23–39:8.

thousands of emails to PEC while managing its investment in Primexx. ¶ 74. BPP HoldCo lacks its own email system. ¶ 75.

- Blackstone Inc. orchestrated the Callon sale despite knowing the price was too low and prioritizing its own interest and those of its subsidiaries. ¶s 91, 98. "Blackstone" structured the deal terms to (i) favor "Blackstone's" sidecar and (ii) misallocate profits according to the waterfall provision. ¶s 102–03, 105–06.

- Blackstone Inc. (along with the other Blackstone affiliated defendants) made joint SEC filings in connection with the Callon sale. ¶ 57. SEC forms for BPP HoldCo list its address as "c/o Blackstone Inc." ¶ 52.

- Blackstone Inc. executives gave the direction to exit the Primexx investment. ¶ 83.

- The "Blackstone Defendants" operate out of the same address. ¶ 53. They are all operated solely by employees of Blackstone Inc. and use "@blackstone.com" email domains. ¶ 54. Blackstone Inc. employees conduct business on behalf of each of the Blackstone affiliated defendants. *Id.* "Blackstone" is operated as a "matrix" organization in which Blackstone Inc. employees conduct work for the Blackstone affiliated defendants. ¶ 55. Blackstone Inc. executives describe themselves as working on behalf of "Blackstone" as a collective organization. *Id.* "Blackstone" used its corporate structure to siphon proceeds from the Callon sale away from BPP HoldCo. ¶s 107–09.

- BPP HoldCo transferred proceeds of the Callon sale (including Callon shares) to the "Blackstone Defendants." ¶s 108–09.

### b. Opposition Evidence

- The evidence submitted in PEOFs' supplemental opposition to Acconcia's special appearance.

- Two additional Acconcia communications showing his management of "Blackstone's" investment in Primexx.[16]

- Testimony from Mr. Acconcia that PEOFs argue shows he was acting on behalf of Blackstone Inc.—and not BPP HoldCo—in managing "Blackstone's" investment in Primexx and the Callon sale, including: he did not recall serving as the President of BPP HoldCo; he reported directly to senior Blackstone Inc. management; he used an "@blackstone.com" email address and his signature block included Blackstone Inc.'s principal address; he did not recall receiving compensation directly from BPP HoldCo; he served on the Blackstone Inc. investment committee that decided to invest in Primexx; etc.[17]

- A talking points memo Mr. Acconcia received from Blackstone Inc. employee Mark Henle following the Callon sale.[18]

- A press release stating that the sale of Primexx to Callon included leasehold interests.[19]

## C. Parties' Arguments

### 1. Acconcia

[¶ 17] Acconcia argued that he was not subject to general jurisdiction, but regardless would be protected in that context by the fiduciary shield doctrine because he was acting in his role as a PEC director and BPP HoldCo

---

[16] PEOFs' Opp. to Blackstone Exhibits 6 & 10 (*in camera*).

[17] PEOFs' Opp. to Blackstone Exhibit 4 at 26:11–27:21, 18:21–19:3, 17:18–25, 35:7–19, 33:14–34:2; Exhibit 6 (*in camera*).

[18] PEOFs' Opp. to Blackstone Exhibit 17 (*in camera*).

[19] PEOFs' Opp. to Blackstone Exhibit 18.

officer.[20] He further challenged the sufficiency of specific jurisdiction because PEOFs had not alleged that he performed acts in Texas on his own behalf that give rise to this dispute, other than conclusory allegations that he "played a key role" in the Callon sale.[21] Furthermore, that he served as BPP HoldCo's President and signed the TAPA on its behalf did not support asserting jurisdiction.[22] He replied that none of PEOFs' evidence supports a different outcome and the director cases PEOFs cited are distinguishable.[23]

[¶ 18] In opposition, PEOFs did not assert general jurisdiction. As to specific jurisdiction, they argued that "Mr. Acconcia's personal and direct involvement in the [TAPA] and investment in Primexx; the governance of Primexx during the Callon sale process; and orchestration of the Callon sale itself grants this Court specific personal jurisdiction."[24] PEOFs focused on the fact that Acconcia "served as a director of a Texas corporation" and "routinely participated in PEC board meetings" and "discussions over email"

---

[20] Acconcia's Br. at 3–4.

[21] Acconcia's Br. at 5–7.

[22] Acconcia's Br. at 2.

[23] Acconcia's Reply at 10–12. Acconcia did not file a supplemental response to PEOFs' March 7, 2025, supplemental opposition. Accordingly, he only responded to the evidence proffered with PEOFs' November 1, 2024, original opposition.

[24] PEOFs' Opp. to Acconcia at 3–4, 12.

concerning the Callon sale.[25]  PEOFs cited cases they argued supported asserting jurisdiction over a non-resident director.[26]

[¶ 19] Later, PEOFs filed a supplemental opposition attaching the products of jurisdictional discovery (listed in the previous section).  They argued that this evidence "confirms Mr. Acconica's robust purposeful contacts in Texas" and that he "conducted business related to Primexx while he was physically located in Texas."[27]  They further argued that the fiduciary shield doctrine does not apply because they were asserting specific jurisdiction.[28]

### 2.    Blackstone Inc.

[¶ 20] Blackstone Inc. argued that this was not an "exceptional case" where general jurisdiction would be appropriate.[29]  It added that specific jurisdiction did not apply because PEOFs did not allege that Blackstone Inc.

---

[25] PEOFs' Opp. to Acconcia at 4, 6 (citing Exhibits 2, 3, 5), 12–16.

[26] *See In Glencoe Cap. Partners IL L.P. v. Gernsbacher*, 269 S.W.3d 157, 164 (Tex. App.—Fort Worth 2008, no pet.); *Fjell Tech. Grp. v. Unitech Int'l Inc.*, No. 14-14-00255-CV, 2015 WL 457805, at *6 (Tex. App.—Houston [14th Dist.] Feb. 3, 2015, pet, denied); *Henkel v. Emjo Investments Ltd.*, 480 S.W.3d 1, 7 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Carlile Bancshares, Inc. v. Armstrong*, No. 02-14-00014-CV, 2014 WL 3891658 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.).

[27] PEOFs' Suppl. Opp. to Acconcia at 2 (emphasis omitted).

[28] PEOFs' Suppl. Opp. to Acconcia at 6 n.3.

[29] Blackstone Br. at 8.

or any of its employees performed any acts in Texas giving rise to this dispute.[30] It further argued that PEOFs did not distinguish between acts performed by individuals—such as Mr. Acconcia—in their capacity as Blackstone Inc. employees as opposed to their capacity as directors and officers of BPP HoldCo or PEC. Additionally, the receipt of Callon shares as proceeds of the Callon sale was insufficient to confer jurisdiction.[31] Finally, it argued that PEOFs had not carried their burden to establish that BPP HoldCo was Blackstone Inc.'s alter ego, and that the TAPA contractually prohibited them from attempting to do so.[32]

[¶ 21] PEOFs' response largely attached the same jurisdictional discovery gathered against Acconcia. They argued that Blackstone Inc. directly controlled its investment in Primexx through its agents—such as Mr. Acconcia—and disavowed any reliance on alter ego allegations.[33] They argued specific jurisdiction was proper over Blackstone Inc. because it (i) raised capital to invest in a Texas partnership governing the assets of a Texas oil

---

[30] Blackstone Br. at 9–11.

[31] Blackstone Br. at 14–16.

[32] Blackstone Br. 12–14.

[33] PEOFs' Opp. to Blackstone at 6, 22.

company, (ii) exercised control over the subsidiary operating the Texas oil company, (iii) was responsible for directing the fire sale of the Texas oil assets to another Texas-based company, and (iv) received hundreds of millions of dollars from the sale of the Texas oil assets.[34]

## II.    APPLICABLE LAW

### A. Special Appearances

[¶ 22]  Rule of Civil Procedure 120a governs special appearances.  TEX. R. CIV. P. 120a(1).  A party availing itself of Rule 120a must strictly comply with its terms because failure to do so results in waiver.  *PetroSaudi Oil Servs. Ltd. v. Hartley*, 617 S.W.3d 116, 136 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

[¶ 23] A party waives its special appearance when it (i) invokes the court's judgment on any question other than the court's jurisdiction; (ii) recognizes by its acts that an action is properly pending; or (iii) seeks affirmative action from the court.  *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004) (per curiam) (citing *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998)).  But a party does not waive its jurisdictional challenge

---

[34] PEOFs' Opp. to Blackstone at 17.

by seeking affirmative relief consistent with the special appearance. *Nationwide Distrib. Servs., Inc. v. Jones*, 496 S.W.3d 221, 225 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

## B. *In Personam* Jurisdiction

[¶ 24] A nonresident defendant is subject to personal jurisdiction in Texas if (i) the Texas long-arm statute authorizes the exercise of jurisdiction and (ii) the exercise of jurisdiction does not violate federal or state constitutional due process guarantees. *Kelly*, 301 S.W.3d at 657.

[¶ 25] The long-arm statute permits courts to exercise jurisdiction over a defendant who "does business in this state," which the Legislature defines to include a nonresident defendant who "commits a tort in whole or in part in this state." *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023) (quoting TEX. CIV. PRAC. & REM. CODE § 17.042(2)).

[¶ 26] The statute's broad "doing business" language (that is, committing a tort in whole or in part in Texas) allows the trial court's jurisdiction to "reach as far as the federal constitutional requirements of due process will allow." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)).

[¶ 27] Therefore, courts need "only analyze whether [the defendant]'s acts would bring [the defendant] within Texas' jurisdiction consistent with constitutional due process requirements." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009).

[¶ 28] A state's exercise of jurisdiction comports with federal due process if (i) the nonresident defendant has "minimum contacts" with the state and (ii) the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 885 (Tex. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

### 1.    Minimum Contacts

[¶ 29]  A defendant establishes minimum contacts with a state when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Retamco*, 278 S.W.3d at 338.

[¶ 30]  Courts consider three issues in determining whether a defendant purposefully availed itself of the privilege of conducting activities in Texas:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than

random, fortuitous, or attenuated. ... Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Id.* at 339 (quoting *Moki Mac*, 221 S.W.3d at 575); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005).

[¶ 31] The minimum-contacts analysis focuses on the "quality and nature of the defendant's contacts," not quantity. *Retamco*, 278 S.W.3d at 339.

[¶ 32] "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Id.* at 338 (quoting *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002)).

### a.    General Personal Jurisdiction

[¶ 33] A court has general jurisdiction over a nonresident defendant whose "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016) (alteration in original) (quoting Daimler v. Bauman, 571 U.S. 117, 127 (2014)).  This test requires "substantial activities within the forum" and presents "a more demanding minimum contacts analysis than for

specific jurisdiction." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 797 (Tex. 2002). When a court has general jurisdiction over a nonresident, it may exercise jurisdiction "even if the cause of action did not arise from activities performed in the forum state." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010).

### b. Specific Personal Jurisdiction

[¶ 34] Specific jurisdiction requires that "(1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities." *Retamco*, 278 S.W.3d at 338 (buying Texas real estate) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "The 'arise from or relate to' requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum." *Moki Mac*, 221 S.W.3d at 579; *Guardian Royal*, 815 S.W.2d at 228 (specific jurisdiction focuses on "the relationship among the defendant, the forum and the litigation").

[¶ 35] For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, "there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac*,

221 S.W.3d at 585. The "operative facts" of a litigation are those that "will be the focus of the trial" and "will consume most if not all of the litigation's attention." *Id.* at 585.

[¶ 36] Specific jurisdiction requires courts to analyze jurisdictional contacts on a claim-by-claim basis. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *see also Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006) ("If a defendant does not have enough contacts to justify the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts."). But a court need not assess contacts on a claim-by-claim basis if all claims arise from the same forum contact. *Moncrief*, 414 S.W.3d at 150–51.

### 2. Fair Play and Substantial Justice

[¶ 37] If the minimum contacts requirements are met, it is "rare" for exercising personal jurisdiction to not comply with fair play and substantial justice. *Retamco*, 278 S.W.3d at 341. Nonetheless, courts still consider factors to ensure that exercising jurisdiction does not offend traditional notions of fair play and substantial justice:

(1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* (citing *Burger King*, 471 U.S. at 477–78).

### 3.    The Parties' Burdens

[¶ 38] The plaintiff "bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Kelly*, 301 S.W.3d at 658. If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute, the defendant need only prove that it does not live in Texas to negate jurisdiction. *Id.* at 658–59. "Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff." *Id.* at 658.

[¶ 39] "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id.* Defendant can negate jurisdiction on either a factual or legal basis. *Id.* at 659.

[¶ 40] Factually, a defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. *Id.* The plaintiff must then respond with its own evidence that affirms its allegations or else risk dismissal. *Id.* However, the court considers "additional evidence," including, "stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony," to the extent it supports or undermines the pleadings' allegations. *Id.* at 658 n.4 (citing TEX. R. CIV. P. 120a(3)). If the plaintiff's evidence is not within the scope of the pleadings' factual allegations, the plaintiff should amend the pleadings for consistency. *Id.* at 659 n.6; *see also Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 129 (Tex. App.—Dallas 2021, no pet.).

[¶ 41] The defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction either (i) because the defendant's contacts with Texas fall short of purposeful availment (including that the claims do not arise from the contacts) or (ii) that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction. *Id.* at 659.

### III. DISCUSSION

## A. The Remaining Claims

[¶ 42] The court had issued its MSJ Opinion when it issued its April 28, 2025, order granting Acconcia and Blackstone Inc.'s special appearances. That opinion dismissed PEOFs' claims that (i) the accepted Callon sale price was too low, (ii) defendants performed inadequate due diligence, and (iii) defendants gave inadequate notice to PEOFs. *Primexx Energy Opportunity Fund, LP v. Primexx Energy Corp.*, 2025 Tex. Bus. 9, ¶ 3, 709 S.W.3d 619, 628 (1st Div.), reconsideration denied 2025 Tex. Bus. 13, 713 S.W.3d 416. Only PEOFs' claims that (iv) the Callon sale proceeds were not properly distributed according to the TAPA waterfall and (v) the consideration was not fairly allocated between PEP and BPP survived the motion (Surviving Claims). *Id.* ¶ 200.

[¶ 43] The parties never discussed whether the court's jurisdictional analysis should address only the Surviving Claims or all asserted claims. *See Moncrief*, 414 S.W.3d at 150 (specific jurisdiction requires claim-by-claim analysis).

[¶ 44] The Texas Supreme Court has warned that courts should not delve into "the underlying merits" when resolving jurisdictional issues. *See*

*Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 70 (Tex. 2016) (quoting *Michiana*, 168 S.W.3d at 790). However, that court's reasoning does not apply where a court has already adjudicated particular issues. *See Michiana*, 168 S.W.3d at 790. Accordingly, this court concludes that the specific jurisdictional analysis should concern only the claims that survived summary judgment. However, the court's conclusions are the same considering all the claims asserted in the SAP (as discussed further below).

**B. Acconcia**

[¶ 45] PEOFs did not argue general jurisdiction over Acconcia. For the following reasons, the court concludes that it lacks personal jurisdiction over Acconcia.

[¶ 46] In short, PEOFs do not allege, argue, or adduce evidence that Acconcia committed a tortious act in whole or in part in Texas that would support personal—meaning direct—liability against him such as making a fraudulent statement, breaching a personal duty, stealing a trade secret, committing a trespass, or converting an asset. Instead, they seek to impute other persons' conduct to him (be it BPP HoldCo or PEC), which imputation is improper. *See Nikolai v. Strate*, 922 S.W.2d 229, 240 (Tex. App.—Fort Worth 1996, writ denied) ("Texas law is clear that a business's contacts may

not be imputed to its personnel to establish personal jurisdiction over them."). Thus, their jurisdictional arguments do not meet even the statutory test for personal jurisdiction as broadly as that statute may be interpreted. *See* TEX. CIV. PRAC. & REM. CODE § 17.042(2) (jurisdiction is proper over a defendant that "commits a tort … in this state"); *Morgan*, 670 S.W.3d at 346.

### 1. PEOFs' Original Opposition Arguments

[¶ 47] PEOFs' original opposition to Acconcia's special appearance argued that "Mr. Acconcia's personal and direct involvement in the [TAPA] and investment in Primexx; the governance of Primexx during the Callon sale process; and orchestration of the Callon sale itself grants this Court specific personal jurisdiction."[35]

***Signing the TAPA***

[¶ 48] The TAPA's negotiation and signing are not substantially connected to this lawsuit's operative facts. PEOFs' claims (both its original claims and the Surviving Claims) concern breaches of contract and fiduciary duties arising out of the Callon sale. The "focus of the trial" and therefore the operative facts will be centered on defendants' conduct surrounding the sale,

---

[35] PEOFs' Opp. to Acconcia at 3–4, 12.

not the initial investment into Primexx or the signing of the TAPA. *See Moki Mac*, 221 S.W.3d at 585. While the TAPA's terms may be relevant to the ultimate trial, the facts surrounding its signing will not be. *See Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999) (contract construction is a matter of law).

### Governance of Primexx and Orchestration of the Callon Sale

[¶ 49] PEOFs argue that Acconcia "purposefully availed himself of the Texas forum through choosing to sit on the board of a Texas-based company."[36] Were that enough to find jurisdiction is proper over a defendant, it would vitiate the fiduciary shield doctrine.

[¶ 50] As a general rule, jurisdiction over an individual cannot be based upon jurisdiction over a corporation. *Nichols v. Tseng Hsiang Lin*, 282 S.W.3d 743, 750 (Tex. App.—Dallas 2009, no pet.). "The fiduciary shield doctrine protects a nonresident corporate officer or employee from a trial court's exercise of general jurisdiction over the individual when all of his contacts with Texas were made on behalf of the employer." *Id.*; *see also Nikolai*, 922 S.W.2d at 240.

---

[36] PEOFs' Opp. to Acconcia at 12.

[¶ 51] In its supplemental opposition, PEOFs argue that the fiduciary shield doctrine does not apply because (i) they allege specific jurisdiction over Acconcia, and the doctrine only protects against general jurisdiction and (ii) corporate agents can always be found liable for their own fraudulent or tortious acts even when acting on behalf of an entity.[37]

[¶ 52] The facts that Acconcia was a director of PEC and President of BPP HoldCo do not by themselves give rise to this litigation. *Moki Mac*, 221 S.W.3d at 585. Therefore, those facts, standing alone, are possibly relevant to only general jurisdiction. *Cf. id.* 576 ("[G]eneral jurisdiction is established whether or not the defendant's alleged liability arises from those contacts."). Thus, the court rejects that Acconcia "purposefully availed himself of the Texas forum through choosing to sit on the board of a Texas-based company."[38]

[¶ 53] However, PEOFs are correct that "a corporate officer is not protected from the exercise of specific jurisdiction, even if all of his contacts were performed in a corporate capacity, if the officer engaged in tortious or

---

[37] PEOFs' Suppl. Opp. to Acconcia at 6 n.3 (citing *Keyes v. Weller*, 692 S.W.3d 274, 279 (Tex. 2024) and *Tabacinic v. Frazier*, 372 S.W.3d 658, 669 (Tex. App.—Dallas 2012, no pet.)).

[38] PEOFs' Opp. to Acconcia at 12.

fraudulent conduct directed at the forum state for which he may be held *personally liable*." *Tabacinic*, 372 S.W.3d at 668–69 (emphasis added).

[¶ 54] As a threshold matter, it is not appropriate to assert jurisdiction over a non-resident corporate officer where the only claims asserted against them are derivative in nature. None of the SAP's causes of actions against Acconcia are based on *direct personal* liability.[39] Instead, each is based on a "derivative," vicarious, or secondary liability theory where he is only liable as a joint tortfeasor.[40]

[¶ 55] That PEOFs never asserted a claim for which Acconcia may be independently liable supports the court's conclusion. *See Tabacinic*, 372 S.W.3d at 668–69; *see also National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) (jurisdiction may not be "based solely upon the effects or consequences of an alleged conspiracy").

---

[39] *See* SAP Eighth (conspiracy), Eleventh (aiding and abetting), and Twelfth (knowing participation) Causes of Action.

[40] *See Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019) (civil conspiracy is a theory of vicarious liability and not an independent tort); *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 738 (Tex. 2020) (aiding and abetting and conspiracy are theories of derivative or vicarious liability); *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (1942) (same as to knowing participation).

[¶ 56] Accordingly, we must examine the actual allegations and evidence of Acconcia's contacts with Texas and their connection to the Callon sale.

[¶ 57] At the time PEOFs filed their opposition, only the Original Petition was on file. The Original Petition alleged that Acconcia played a "key," "central," or "instrumental" role in pushing through the Callon sale without further specifics.[41] The court concludes that these conclusory allegations "are insufficient to meet [PEOFs'] burden of establishing jurisdiction." *PermiaCare v. L.R.H.*, 600 S.W.3d 431, 444 (Tex. App.—El Paso 2020, no pet.) (citing *State v. Lueck*, 290 S.W.3d 876, 884–85 (Tex. 2009)).

[¶ 58] As the concurrence remarked in *Steward Health Care*, "[c]orporations do not have a corporeal existence and can only act through their agents" and thus every corporate tort might inevitably subject at least one individual to a personal capacity suit if PEOFs' conclusory allegations were sufficient. 633 S.W.3d at 150–51 (J. Schenck concurring). However, this would "eviscerate the fiduciary shield doctrine and render it meaningless." *Id.*

---

[41] Pet. ¶s 4, 71, 77.

at 151.  Instead, a plaintiff must still plead and, when challenged, provide facts that would justify personal jurisdiction in a tort action by showing that the defendant committed a direct liability tort in whole or in part while in Texas, even as broadly as the long-arm statute may be construed.  *See* TEX. CIV. PRAC. & REM. CODE § 17.042(2); *Kelly*, 301 S.W.3d at 658–59.

[¶ 59] PEOFs' opposition included proof that (i) Acconcia attended remote/hybrid PEC board meetings on June 9, 2021 and July 13, 2021, that were at least partially held in Texas and (ii) he received an email from Chris Doyle (who was located in Texas) regarding the Callon sale.[42]  However, that evidence fails to show that (i) Acconcia committed a tort in whole or in part in Texas that would support direct liability against him and (ii) PEOFs' causes of action arise from those contacts.  *Retamco*, 278 S.W.3d at 338.

[¶ 60]  First, neither of the board meetings to which PEOFs point are the July 30, 2021, or August 2, 2021, meetings where the Callon sale was announced or voted on.[43]  Second, the June ninth and July thirteenth meeting minutes do not show that Acconcia took any action.[44]  As discussed above,

---

[42] *See* ¶ 16.

[43] SAP ¶s 3, 4.

[44] PEOFs' Opp. to Acconcia Exhibits 2 & 3.

Acconcia's mere attendance of PEC board meetings, without any indication that he took any role or action regarding the Callon sale, are insufficient.

[¶ 61] Regarding the email, receipt of emails from a Texas resident do not support jurisdiction because it constitutes the unilateral act of another party. *Retamco*, 278 S.W.3d at 339; *see also Moncrief*, 414 S.W.3d at 152–53 (*Michiana* overruled a myriad of cases where jurisdiction was predicated solely on receipt of out-of-state communications).

[¶ 62] In comparison, the cases cited by PEOFs demonstrate scenarios where the out-of-state director/manager defendant's contacts with Texas were more significant and plaintiff's causes of action directly arose from those contacts. *See Glencoe*, 269 S.W.3d at 167 (defendant directors' own misrepresentations during board meetings were the "operative facts of the [fraud] litigation"); *Carlile*, 2014 WL 3891658, at *12 (defendant directors conducted the due diligence that allegedly failed to disclose information in Texas during merger negotiations); *Fjell Tech.*, 2015 WL 457805, at *8 (defendant manager's emails sent to Texas residents were the basis of plaintiff's trade secret causes of action); *Henkel*, 480 S.W.3d at *7 (formation of Texas-based company itself, and defendant director's role on the board, was at the center of the alleged fraudulent investment scheme).

[¶ 63] Those cases are all distinguishable and demonstrate why personal jurisdiction is improper here.

### 2. PEOFs' Supplemental Opposition Arguments

[¶ 64] The SAP and PEOFs' supplemental opposition added additional allegations and evidence that PEOFs allege support specific jurisdiction over Acconcia.[45]

[¶ 65] The SAP's allegations substantially overlap with the ones included in the Original Petition, except that PEOFs now additionally allege that Acconcia "actively participated in," and facilitated "Blackstone's" and PEC's failures to (i) evaluate Primexx's viable options; (ii) conduct a proper due diligence, sale, or marketing process; (iii) consider whether a rushed sale without proper marketing would be fair to PEP or PEOFs; and (iv) properly allocate waterfall proceeds.[46]

[¶ 66] Despite being marginally more specific than PEOFs' original allegations, they are no less conclusory. *PermiaCare*, 600 S.W.3d at 444. Indeed, they are essentially a recitation of the court's characterization of

---

[45] *See* ¶ 16.

[46] SAP ¶s 78–80, 104.

PEOFs' claims from its MSJ Opinion. *See Primexx*, 2025 Tex. Bus. 9, ¶s 3, 200.

[¶ 67] PEOFs' new evidence obtained through discovery includes admissions from Acconcia and documents showing that he travelled to Texas on at least two occasions during his work on the board of PEC and that he communicated with several individuals that appeared to be in Texas concerning Primexx.[47] Assuming this evidence suggests purposeful Texas contacts, "[f]or specific-jurisdiction purposes, purposeful availment has *no jurisdictional relevance unless* the defendant's liability arises from or relates to the forum contacts." *Moki Mac*, 221 S.W.3d at 579 (emphasis added).

[¶ 68] PEOFs' evidence of Acconcia's contacts with Texas are not substantially connected with the operative facts of either the Surviving Claims or all asserted claims. While his contacts may have been related to his work on the PEC board, none of the evidence shows any connection to the Callon sale.[48] Indeed, for example, PEOFs note that Acconcia "actively participated" in a June 9, 2021, hybrid board meeting that was held in Dallas and

---

[47] *See* ¶ 16.

[48] *See* ¶ 16.

telephonically, but they fail to address that *none* of Acconcia's recorded comments have anything to do with the Callon sale.[49]

[¶ 69] And while Acconcia may have been in Texas on two occasions, the evidence shows only that he was in the state and potentially on Primexx business, but not that he took any actions related to the Callon sale, let alone that he did anything in Texas that would be independently tortious as to PEOFs.[50] They do not even assert direct tort liability against him.

\* \* \* \* \*

[¶ 70] Therefore, the court concludes that it lacks personal jurisdiction over Acconcia.

## C. Blackstone Inc.

### 1. Minimum contacts

[¶ 71] PEOFs did not argue general jurisdiction regarding to Blackstone Inc. Instead, they argued four theories for specific jurisdiction over Blackstone Inc.: (i) it raised capital to invest in a Texas partnership governing the assets of a Texas oil company, (ii) it exercised control over the subsidiary

---

[49] PEOFs' Suppl. Opp. to Acconcia at 3, Exhibits 1 & 5 (*in camera*).

[50] PEOFs' Suppl. Opp. to Acconcia Exhibits 1, 2, 3, 4 (*in camera*).

operating the Texas oil company, (iii) it was responsible for directing the fire sale of the Texas oil assets to another Texas-based company, and (iv) it received hundreds of millions of dollars from the sale of the Texas oil assets.[51] None of these arguments support jurisdiction over Blackstone Inc.

### *Raised Capital*

[¶ 72] PEOFs' first theory fails because raising capital to invest in Primexx is not sufficiently connected to the operative facts of this lawsuit and their argument is contradicted by their own pleadings (nor is it independently tortious conduct). PEOFs' claims (both its original claims and the Surviving Claims) concern breaches of contract and fiduciary duties arising out of the Callon sale. The "focus of the trial" and therefore the operative facts will be centered on defendants' conduct surrounding the sale, not the initial investment into Primexx. *Moki Mac*, 221 S.W.3d at 585. Furthermore, PEOFs' argument is contradicted by their own pleadings, which consistently allege that defendants Blackstone Energy Partners II LP and Blackstone

---

[51] PEOFs' Opp. to Blackstone at 17.

Capital Partners VII LP raised and committed capital for the investment, not Blackstone Inc.[52]

### *Control over BPP HoldCo and Responsibility for the Callon Sale*

[¶ 73] PEOFs' second and third theories essentially rely on the same allegations and facts asserted against Acconcia contending that he was Blackstone Inc.'s agent. *See Huynh v. Nguyen*, 180 S.W.3d 608, 620 (Tex. App.—Houston [14th Dist.] 2005, no pet. For the reasons discussed earlier regarding Acconcia's special appearance, *see* ¶s 49–69, those arguments fail to establish this court's jurisdiction over Blackstone Inc.

[¶ 74] Furthermore, while "[t]he Texas contacts of agents or employees are attributable to their nonresident principals," 180 S.W.3d at 620, PEOFs still had to adequately identify Acconcia's principal in question. *See IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007) ("Texas law does not presume agency, and the party who alleges it has the burden of proving it.").

[¶ 75] The court concludes that Acconcia's Texas-based contacts were performed on behalf of either PEC or BPP HoldCo, not Blackstone Inc. Acconcia was President of BPP HoldCo and a director of PEC.[53] He attended

---

[52] SAP ¶s 45, 48.

[53] SAP ¶ 34.

joint board meetings in his capacity as a PEC director and BPP HoldCo manager.[54] It is his performance of duties as director of the general partner and manager of one of the limited partners that is relevant to PEOFs' causes of action. The reason he was a PEC director was because BPP HoldCo appointed him to the role.[55] It was therefore BPP HoldCo that had the power to remove Acconcia as a director if it was unhappy with his performance, not Blackstone Inc.[56] So, Acconcia's activities are not attributable to Blackstone Inc.

***Callon Sale Proceeds***

[¶ 76] PEOFs' fourth theory fails because the proceeds "Blackstone" received from the Callon sale were fungible assets, which do not support jurisdiction, rather than Texas real estate, which may.

[¶ 77] Blackstone Inc. argues that receipt of Callon shares does not support jurisdiction because they are "a fungible asset" and create "no

---

[54] PEOFs' Opp. to Acconcia Exhibits 2 & 3; PEOFs' Suppl. Opp. to Acconcia Exhibit 5 (*in camera*).

[55] *See* 2025 Tex. Bus. 9, ¶s 17–18.

[56] PEOFs' Opp. to Acconcia at 13 ("Mr. Acconcia served as the President of BPP HoldCo, the company that managed Blackstone's investment in the Primexx Texas oil assets.").

continuing presence in Texas," like the cash transfer in O*ld Republic Nat. Title Ins. Co. v. Bell*, 549 S.W.3d 550, 563–64 (Tex. 2018).[57]

[¶ 78]  PEOFs argue that *Old Republic* does not apply because that case involved cash transfers between two friends and noted that the analysis may have been different had the defendant been "a corporate lender distributing funds … with the expectation of collecting interest."  *Id.* at 562; *cf. Retamco*, 278. S.W.3d at 341 (oil and gas interests are real property interests that create a continuing relationship with the forum).[58]

[¶ 79] PEOFs' attempt to distinguish *Old Republic* misses the mark because they cite to the portion of the opinion concerning the defendants' transfer of money *to Texas*, not the transfer of money *away from Texas*, which is the relevant section here.  *Compare* 549 S.W.3d. at 562 (no personal jurisdiction based on sending money to a friend in the state) *with id.* at 563–64 (no jurisdiction based on receiving money from the sale of real estate in Texas).  Furthermore, as discussed previously, "Blackstone's" transfer of

---

[57] Blackstone Br. at 15–16.

[58] PEOFs' Opp. to Blackstone at 30.

money to Texas is not an operative fact because the initial investment into Primexx will not be the focus at trial. *Moki Mac*, 221 S.W.3d at 585.

[¶ 80] Furthermore, as *Old Republic* explains, *selling* Texas-based assets does not create the same continuing connection with the forum as *receiving* Texas-based assets. *See* 549 S.W.3d at 563–64 (distinguishing *Retamco*). The defendant in *Old Republic* received cash proceeds from the sale of Texas real estate. The supreme court said that transfer of "a fungible asset—money—with no continuing presence in Texas … is of negligible significance for purpose of determining whether a foreign defendant had sufficient contacts in Texas." *Id.* at 564 (quotations omitted). Here, the parties sold Texas oil and gas interests and received cash and Callon shares. Callon is a public company.[59] Shares in a public company are fungible assets.[60] Thus, the present case is more like *Old Republic* than *Retamco*.

\* \* \* \* \*

[¶ 81] Accordingly, Blackstone Inc. does not have sufficient minimum contacts with Texas to support specific jurisdiction.

---

[59] *See* SAP ¶ 82.

[60] *See Fungibility: What It Means and Why It Matters*, Investopedia.com (last accessed 7/11/2025) https://www.investopedia.com/terms/f/fungibility.asp.

### 2. Alter Ego Jurisdiction

[¶ 82]  Blackstone Inc. further argued that PEOFs failed to overcome the presumption against imputing the jurisdictional contacts of one entity against a related entity.[61]  In response, PEOFs explicitly disclaimed that they were relying on any "alter ego" basis for establishing personal jurisdiction.[62]  However, later, PEOFs included alter ego allegations in the SAP.[63]  The court therefore addresses this issue.

[¶ 83] PEOFs make allegations regarding whether Blackstone Inc. exerted the level of "control" that is "greater than normally associated with common ownership and directorship."  *BMC*, 83 S.W.3d at 798–99.[64]  However, the court does not address whether Blackstone Inc. broke that barrier.

[¶ 84] Rather, to establish alter ego jurisdiction, the evidence must show "that the two entities cease[d] to be separate so that the corporate fiction should be disregarded *to prevent fraud or injustice*."  *Id.*  Here, there could not

---

[61] Blackstone Br. at 12–14.

[62] PEOFs Opp. to Blackstone at 32.

[63] SAP ¶s 53–58, 107.

[64] *See* SAP ¶s 53–58, 107 (the Blackstone Inc. affiliated entities share the same address, email domain name, employees, etc.).

have been any fraud or injustice regarding the corporate structure because PEOFs admit they were fully aware of the structure that "Blackstone" created for its Primexx investments—with Blackstone Inc. at the top, seven-layers removed from BPP HoldCo, who became a partner in Primexx.[65] PEOFs, as sophisticated parties, saw that "HoldCo" was constructed precisely to insulate its ultimate parent from liability.[66]

[¶ 85] It is important that parties may "structure their primary conduct with some minimum assurance" where they are liable to suit so that corporations may make "business and investment decisions." *See BRP-Rotax GmbH & Co. KG v. Shaik*, ---- S.W.3d ----, 2025 WL 1727903, at *12 (Tex. June 20, 2025) (J. Busby concurring) (internal quotations and citations omitted); *see also Michiana*, 168 S.W.3d at 785. So, the court concludes that Blackstone Inc. could not have "reasonably anticipate[d] being called into a Texas court" based on the structure of its investment into Primexx and its management of the same. *Retamco*, 278 S.W.3d at 338.

---

[65] SAP ¶ 23, 44.

[66] *See* PEOFs' Opp. to Acconcia at 5 ("Blackstone used a subsidiary called BPP HoldCo LLC to serve as the investment vehicle for its majority stake in Primexx.").

### 3. Waiver

[¶ 86] Finally, the court concludes that Blackstone Inc. did not waive its special appearance by raising TAPA § 13.9 in its brief.[67] Blackstone Inc. did not invoke the court's judgment on any question other than the court's jurisdiction, recognize by its acts that this action is properly pending, or seek affirmative action from the court through its brief reference to TAPA § 13.9. *Exito Elecs.*, 142 S.W.3d at 304. And the court does not rest its opinion on TAPA § 13.9.

## IV. CONCLUSION

[¶ 87] For these reasons, the court previously granted Acconcia and Blackstone's special appearances on April 28, 2025.

_____
BILL WHITEHILL
Judge of the Texas Business Court,
First Division

SIGNED: July 16, 2025

---

[67] Blackstone Br. 14; PEOFs' Opp. to Blackstone at 32–33.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 103231769
Filing Code Description: No Fee Documents
Filing Description: Opinion on Acconcia and Blackstone Inc.'s special appearances
Status as of 7/17/2025 7:53 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Christopher W.Patton | | cpatton@lynnllp.com | 7/16/2025 5:35:04 PM | SENT |
| Scott Smoot | | ssmoot@lynnllp.com | 7/16/2025 5:35:04 PM | SENT |
| Stephen Shackelford | | sshackelford@susmangodfrey.com | 7/16/2025 5:35:04 PM | SENT |
| NATALIE STALLBOHM | | nstallbohm@lynnllp.com | 7/16/2025 5:35:04 PM | SENT |
| M. TaylorLevesque | | taylor.levesque@troutman.com | 7/16/2025 5:35:04 PM | SENT |
| Sarah Hannigan | | shannigan@susmangodfrey.com | 7/16/2025 5:35:04 PM | SENT |
| Gary Vogt | | gvogt@kirkland.com | 7/16/2025 5:35:04 PM | SENT |
| Bryan Caforio | | bcaforio@susmangodfrey.com | 7/16/2025 5:35:04 PM | SENT |
| Michelle Williams | | mwilliams@susmangodfrey.com | 7/16/2025 5:35:04 PM | SENT |
| Kerri Jones | | kjones@lynnllp.com | 7/16/2025 5:35:04 PM | SENT |
| Karyn Cooper | | karyn.cooper@kirkland.com | 7/16/2025 5:35:04 PM | SENT |
| Gina Flores | | gflores@lynnllp.com | 7/16/2025 5:35:04 PM | SENT |
| Roger BCowie | | Roger.Cowie@troutman.com | 7/16/2025 5:35:04 PM | SENT |
| Jeremy Fielding | | jeremy.fielding@kirkland.com | 7/16/2025 5:35:04 PM | SENT |
| Zack Ewing | | zack.ewing@kirkland.com | 7/16/2025 5:35:04 PM | SENT |
| Nicholas Perrone | | nicholas.perrone@kirkland.com | 7/16/2025 5:35:04 PM | SENT |
| Josephine Wang | | jwang@susmangodfrey.com | 7/16/2025 5:35:04 PM | SENT |
| Lindsey Godfrey Eccles | | leccles@susmangodfrey.com | 7/16/2025 5:35:04 PM | SENT |
| Michael Patton | | michael.patton@kirkland.com | 7/16/2025 5:35:04 PM | SENT |
| Laura QuinnBrigham | | laura.brigham@kirkland.com | 7/16/2025 5:35:04 PM | SENT |
| Christopher Schwegmann | | cschwegmann@lynnllp.com | 7/16/2025 5:35:04 PM | SENT |
| Yaman Desai | | ydesai@lynnllp.com | 7/16/2025 5:35:04 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 103231769
Filing Code Description: No Fee Documents
Filing Description: Opinion on Acconcia and Blackstone Inc.'s special appearances
Status as of 7/17/2025 7:53 AM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Yaman Desai | | ydesai@lynnllp.com | 7/16/2025 5:35:04 PM | SENT |
| Kyle Gardner | | kgardner@lynnllp.com | 7/16/2025 5:35:04 PM | SENT |
| Louisa Karam | | louisa.karam@lockelord.com | 7/16/2025 5:35:04 PM | SENT |
| Theressa Washington | | Theressa.Washington@lockelord.com | 7/16/2025 5:35:04 PM | SENT |
| Business Court 1B | | BCDivision1B@txcourts.gov | 7/16/2025 5:35:04 PM | SENT |
| Griffin Vail | | griffin.vail@kirkland.com | 7/16/2025 5:35:04 PM | SENT |
| Jessica Cox | | jcox@lynnllp.com | 7/16/2025 5:35:04 PM | SENT |
| Veronica Long | | Veronica.Long@troutman.com | 7/16/2025 5:35:04 PM | SENT |